UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
TODD C. BANK,

                              Plaintiff,                      REPORT AND
                                                                   RECOMMENDATION

                          -against-                                  18-CV-2555 (MKB)

VIVINT SOLAR, INC.,

                              Defendant.
----------------------------------------------------------------x

**ROANNE L. MANN, CHIEF UNITED STATES MAGISTRATE JUDGE:**

        Plaintiff Todd C. Bank ("Bank" or "plaintiff"), an attorney proceeding *pro se*, brings this action against defendant Vivint Solar, Inc. ("Vivint" or "defendant"), alleging individual and class claims based on unauthorized "robocalls" in violation of the Telephone Consumer Protection Act (the "TCPA"), 47 U.S.C. § 227, and New York General Business Law (the "GBL") § 399-p. See Amended Complaint (June 27, 2018) ("Am. Compl."), Electronic Case Filing ("ECF") Docket Entry ("DE") #12. Currently before this Court, on a referral from the Honorable Margo K. Brodie, is defendant's motion to dismiss the Amended Complaint in its entirety pursuant to Rules 12(b)(6) and 12(b)(2) of the Federal Rules of Civil Procedure (the "FRCP"). See Memorandum in Support of Motion to Dismiss (Aug. 10, 2018) ("Def. Mem."), DE #14-1; Order Referring Motion (Oct. 9, 2018). For the reasons that follow, this Court recommends that defendant's motion to dismiss be granted.

## BACKGROUND

        The following facts are drawn from plaintiff's Amended Complaint and those that are non-conclusory are accepted as true for purposes of this motion.

On or about March 17, 2018, Bank received an unsolicited phone call to his cellular telephone (the "Prerecorded Call"). See Am. Compl. ¶ 16. Upon answering the telephone call, a prerecorded voice on the other end promoted residential solar-energy services. See id. ¶ 18. Following the playing of the prerecorded material, Bank was transferred to a live person (the "Transferee"). See id. ¶ 19. Bank provided an (unspecified) alias to the Transferee, who told Bank that, approximately 30 minutes later, someone would call him. See id. ¶¶ 20-21. Approximately 30 minutes later, the same cellular telephone utilized by Bank received a telephone call from Joshua Lilly, an employee of defendant, who stated that he was calling to speak with the alias that Bank had provided to the Transferee. See id. ¶¶ 22-23. During the conversation between Bank and Lilly, Lilly stated that Vivint regularly uses telephone calls with prerecorded material advertising Vivint's services. See id. ¶ 24. According to the Amended Complaint, defendant placed, or directed to be placed, the Prerecorded Call. See id. ¶ 32.

Plaintiff brings his lawsuit on behalf of a nationwide class of persons who have received similar prerecorded telephone calls in their home states, as well as on behalf of a class of New York residents who have received such calls on New York telephone numbers. See id. ¶¶ 2, 3.

## PROCEDURAL HISTORY

Plaintiff commenced this action on April 30, 2018. See Complaint (Apr. 30, 2018) ("Compl."), DE #1. Following the filing of defendant's request for a premotion conference in contemplation of moving to dismiss, see Motion for Pre Motion Conference (June 22, 2018),

2

DE #10, plaintiff filed the Amended Complaint, which contains two causes of action: the first, for violations of section 227(b) of the TCPA, and the second, for violations of section 399-p(3)(a) of the GBL, see Am. Compl. The Amended Complaint does not, however, address the alleged deficiencies raised by defendant in its premotion letter with regard to the individual claim brought under section 227(b) of the TCPA, and that claim is reasserted in the First Cause of Action in the Amended Complaint.[1]

Defendant now moves to dismiss the remaining TCPA cause of action for failure to state a claim, the GBL state law claim for lack of subject matter jurisdiction, and the class claims of non-New York residents for lack of personal jurisdiction.

## DISCUSSION

### I. The Legal Standard Under Rule 12(b)(6)

In considering a motion to dismiss pursuant to Rule 12(b)(6) of the FRCP, a court must accept the complaint's factual allegations as true, and draw all reasonable inferences in favor of the plaintiff. See, e.g., Sherman v. Town of Chester, 752 F.3d 554, 560 (2d Cir. 2014). To survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007); accord Hayden v. Paterson, 594 F.3d 150, 160 (2d Cir. 2010). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). A plaintiff need not allege "detailed or elaborate factual allegations, but only

---

[1] In amending his pleading, plaintiff did drop his claim under section 227(c)(5) of the TCPA, which was set forth in the Second Cause of Action of the original Complaint.

3

allegations sufficient to raise an entitlement to relief above the speculative level." Keiler v. Harlequin Enters. Ltd., 751 F.3d 64, 70 (2d Cir. 2014). Nevertheless, "a formulaic recitation of the elements of a cause of action will not do": the claim must set forth "more than labels and conclusions[.]" Twombly, 550 U.S. at 555.

## II. The TCPA Claim

Section 227(b)(1)(A)(iii) of the TCPA makes it unlawful for any person:

> to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned . . . to a cellular telephone service . . . .

47 U.S.C. § 227(b)(1)(A)(iii).

Defendant argues that Bank's TCPA claim should be dismissed for failure to state a claim. Specifically, defendant contends that Bank failed to allege facts demonstrating that the Prerecorded Call was made either by Vivint, or by an agent of Vivint for which Vivint would be vicariously liable. See Def. Mem. at 4-8.

Plaintiff counters that his amended pleading sufficiently alleges (1) that defendant is directly liable for the Prerecorded Call, and (2) that defendant is vicariously liable for that robocall under a variety of legal theories, addressed below. See Memorandum in Opposition to Defendant's Motion to Dismiss Plaintiff's Individual Federal Claims (Aug. 31, 2018) ("Pl. Opp.") at 18-23, DE #15.

### A. Direct Liability

In order to state a plausible claim for direct liability under section 227(b)(1) of the TCPA, "a plaintiff must allege that a defendant initiated an unlawful call[.]" Bank[ ] v. Pro

4

Custom Solar, 17-CV-613 (LDH) (JO), 2018 WL 3637960, at *2 (E.D.N.Y. July 31, 2018). Here, the Amended Complaint asserts, in conclusory fashion, that Vivint "placed, or directed to be placed," the Prerecorded Call. See Am. Compl. ¶ 32. The pleading nevertheless acknowledges that, while promoting "residential solar-energy services," id. ¶ 18, the Prerecorded Call did not disclose the name, address or telephone number of any entity (or entities) on whose behalf the call was being made, see id. ¶¶ 27-29. Further, the Amended Complaint is silent as to the caller ID displayed during the Prerecorded Call. Likewise absent from the pleading are any specifics as to the statements made by the Transferee (the live person to whom the robocall was forwarded) regarding the source of the Prerecorded Call or the entity or entities whose business was being promoted.

In support of his theory of direct liability, Bank points to the telephone call placed by Lilly to Bank's cellphone 30 minutes after Bank's conversation with the Transferee. See Pl. Opp. at 18; Am. Compl. ¶ 24 (alleging that Lilly stated that Vivint "regularly utilizes telephone calls in which . . . prerecorded material advertises Vivint's services"). Lilly's comment is, however, an insufficient basis upon which to infer that Vivint made the specific Prerecorded Call that is the subject of plaintiff's First Cause of Action. See Pro Custom Solar, 2018 WL 3637960, at *2 (ruling that Bank failed to state a plausible claim for direct liability under section 227(b) of the TCPA, despite his allegation that in two calls occurring after the challenged prerecorded call, defendant's agents acknowledged that defendant utilized robocalls); Cunningham v. Channer, LLC, Case # 17-CV-1305-FPG, 2018 WL 4620391, at *6 (W.D.N.Y. Sept. 26, 2018) (denying motion for default judgment where plaintiff failed to

5

allege facts from which the court could infer that defendant, which processed payments on behalf of collection agency that robocall instructed plaintiff to call, was either directly or vicariously liable for violating the TCPA); see also Bank v.Philips Elecs. N. Am. Corp., No. 14-CV-5312 (JG)(VMS), 2015 WL 1650926, at *1-2 (E.D.N.Y. Apr. 14, 2015) (Bank's allegation that prerecorded "calls were 'made by, or on behalf of, or with the authorization of, an authorized dealer of [defendant]'" were "too conclusory to state a plausible claim against [defendant]," despite allegation that defendant's product was referenced in the robocall).[2]

### B. Vicarious Liability

As defendant concedes, see Reply in Support (Sept. 10, 2018) at 1, DE #17, a TCPA defendant may also be held liable under a theory of vicarious liability, see Pro Custom Solar, 2018 WL 3637960, at *2; Cummingham, 2018 WL 4620391, at *6; Jenkins v. National Grid USA, 15-CV-1219(JS)(GRB), 2017 WL 1208445, at *7 (E.D.N.Y. Mar. 31, 2017). In opposing defendant's motion, plaintiff proffers several theories of vicarious liability -- apparent authority, ratification, and aiding and abetting, see Pl. Opp. at 19-21[3] -- all of which are unavailing for the reasons discussed below.[4]

---

[2] Indeed, as a frequent filer of TCPA claims, on behalf of himself and others, Bank is well versed in how to identify an unauthorized caller. See, e.g., Pro Custom Solar, 2018 WL 3637960, at *1 (describing investigation conducted by Bank); Philips Elecs., 2015 WL 1650926, at *1 (identifying caller by information in caller ID); Bank v. Alliance Health Networks, LLC, No. 15-CV-213 (JG)(VMS), 2015 WL 4645317, at *1 (E.D.N.Y. Aug. 4, 2015) (same), aff'd, 669 F.App'x 584 (2d Cir. 2016).

[3] Notably, Bank does not argue that the maker of the Prerecorded Call acted with *actual authority* from defendant to do so. See Pl. Opp. at 19-21; cf. Pro Custom Solar, 2018 WL 3637960, at *2 (noting that Bank "advance[d] the theory of actual authority").

[4] Plaintiff's purported theory of "Approval After the Tortious Act" is not distinct from his aiding and abetting and/or ratification theories. See generally Semon v. Rock of Ages Corp., Case No. 5:10-cv-

As a preliminary matter, and as recognized by a series of decisions issued out of this District, in order to withstand a motion to dismiss, a plaintiff asserting vicarious liability in a TCPA action "must allege an agency relationship between" the maker of the call, such as a marketing company, and the defendant. See Philips Elecs., 2015 WL 1650926, at *3 (citing Jackson v. Caribbean Cruise Line, Inc., 88 F.Supp.3d 129 (E.D.N.Y. 2015)); accord Alliance Health, 2015 WL 464513, at *2.[5] The existence of *some* connections between the defendant and the maker of the call will not suffice: Vicarious liability will not be found in the absence of "allegations of fact that establish an agency relationship between [the defendant] and [the maker of the robocalls] or any control by [the defendant] over [that entity]." Philips Elecs., 2015 WL 1650923, at *3; see Jackson, 88 F.Supp.3d at 138-39 (granting motion to dismiss TCPA claim; even if a contract existed between the defendant and the sender of automated calls, the pleading contained no "non-conclusory suggestion of 'direction' or 'control' by [the defendant] of [the robocaller]"); Melito v. Am. Eagle Outfitters, Inc., 14-CV-02440 (VEC), 2015 WL 7736547, at *6-7 (S.D.N.Y. Nov. 30, 2015). As detailed more fully below, the absence of non-conclusory allegations of such an agency relationship and/or control is a fatal flaw in each of plaintiff's various theories of vicarious liability.

---

143, 2011 WL 13112212, at *13 (D. Vt. Dec. 23, 2011) ("all who aid in the commission of a tort by another, or who approve of it after it is done, if done for their benefit, are liable in the same manner as they would be if they had done it with their own hands") (citation, internal quotation marks, and alteration omitted).

[5] In Alliance Health, a case brought by Bank, Judge John Gleeson distinguished his earlier decision in another Bank case, McCabe v. Caribbean Cruise Line, Inc., No. 13-CV-6131 (JG), 2014 WL 301487, at *3 (E.D.N.Y. July 3, 2014), in which robocalls were alleged to have been made pursuant to a contract with one of the defendants. See 2015 WL 4645317, at *1.

*1. Apparent Authority*

"Apparent authority exists when a principal, either intentionally or by lack of ordinary care, induces [a third party] to believe that an individual has been authorized to act on its behalf."  Highland Capital Mgmt. LP v. Schneider, 607 F.3d 322, 328 (2d Cir. 2010) (internal quotation marks omitted); see Dinaco, Inc. v. Time Warner, Inc., 346 F.3d 64, 69 (2d Cir. 2003).  Apparent authority is created "through the words and conduct of the principal as they are interpreted by a third party, and cannot be established by the actions or representations of the agent."  Minskoff v. Am. Express Travel Related Servs. Co., Inc., 98 F.3d 703, 708 (2d Cir. 1996) (citing Fennell v. TLB Kent Co., 865 F.2d 498, 502 (2d Cir. 1989)).

In support of his theory of apparent authority, Bank relies principally on Bank[ ] v. Pro Custom Solar, 2018 WL 3637960, at *3, wherein Judge LaShann DeArcy Hall concluded that Bank had adequately alleged that the defendant was vicariously liable for violations of the TCPA by its purported agent.  See Pl. Opp. at 19; see also id. at 15-18.  There, however, Bank alleged that after receiving a telephone call with a prerecorded message, he was *directly transferred* to a live representative of the purported agent who stated that the phone call was placed "to 'promote the goods and services of [Defendant].'"  See Pro Custom Solar, 2018 WL 3637960, at *3 (brackets in original).  A representative of the defendant thereafter confirmed that the purported agent "was its operating service."  See id.[6]

---

[6] Bank also relies upon unreported rulings in two related TCPA cases brought by him in this District, in which Judge Carol B. Amon denied the defendants' motions for summary judgment.  See Pl. Opp. at 14 (citing DE #107 in Bank v. Lifewatch Inc., 15cv2278 (CBA), and DE #62 in Bank v. Lifewatch Inc. 15cv5708 (CBA)).  An unreported ruling on the record has no precedential value, see Bd. of Managers

8

Bank's Amended Complaint in the instant action contains no similar factual allegations. Bank provides no details as to the content of the Prerecorded Call from which he could have inferred that it was placed by an agent of Vivint. More importantly, Bank has not identified any statements made by the purported principal (Vivint) that would have led Bank to reasonably believe that the maker of the Prerecorded Call had authority to act on Vivint's behalf. See Thomas v. Taco Bell Corp., 582 F.App'x 678, 679-80 (9th Cir. 2014) (affirming dismissal of TCPA complaint where plaintiff failed to allege that defendant manifested that agent was authorized); Avola v. Louisiana-Pac. Corp., 991 F.Supp.2d 381, 398 (E.D.N.Y. 2013); see also Keating v. Peterson's Nelnet, LLC, 615 F.App'x 365, 373-74 (6th Cir. 2015) ("[N]othing in the record before this court reasonably can be construed to indicate that the defendants held out to third parties, or to anyone else, that [the marketing company] was authorized to send text messages to individuals who had not agreed to receive them."). Nor does Bank allege that following the Prerecorded Call, he was transferred to a live person who informed him that he was a representative of defendant[7] or was promoting defendant's goods

---

of Soho Int'l Arts Condo. v. City of New York, No. 01 Civ.1226 (DAB), 2003 WL 21403333, at *15 & n.20 (S.D.N.Y. June 17, 2003), and the court transcript upon which Bank purports to rely, see Pl. Opp. at 14, has not even been made part of the record in this case. Moreover, the facts alleged in the two Lifewatch complaints bear no resemblance to the facts pled in the instant case: There, at the conclusion of the challenged robocalls, Bank was transferred either to the defendant's representative, see Amended Complaint ¶ 11, DE #37 in Lifewatch, 15-cv-5708, or to a live person who identified the defendant as the maker of the robocall, see Amended Complaint ¶¶ 22-28, DE #48 in Lifewatch, 15cv2278.

[7] Even had that happened, at least one court has held that "[t]he transfer of the call [to the defendant] does not establish that Defendant exerted control over the initiator of the call, supervised or controlled the initial call, or maintained any sort of relationship with the initiator of the call, and thus is insufficient to establish an agency relationship between the transferor and Defendant." Childress v. Liberty Mut. Ins. Co., No. 17-CV-1051 (MV/KBM), 2018 WL 4684209, at *4 (D.N.M. Sept. 28, 2018).

9

and services.[8]

The Amended Complaint does not allege that Bank believed that the Prerecorded Call was placed by an agent of Vivint, let alone that such a belief was reasonable. See Thomas, 582 F.App'x at 679-80 (finding that plaintiff "has not shown that she reasonably relied, much less to her detriment, on any apparent authority"); Smith v. State Farm Mut. Auto. Ins. Co., 30 F.Supp.3d 765, 777-78 (N.D. Ill. 2014). Plaintiff's allegation that, in a subsequent communication, Vivint's representative (Lilly) acknowledged that Vivint uses prerecorded material to advertise its services does not plausibly show that Vivint authorized the Prerecorded Call. See Naiman v. Tranzvia LLC, Case No. 17-cv-4813-PJH, 2017 WL 5992123, at *7, *12 (N.D. Cal. Dec. 4, 2017) (plaintiff failed to allege facts sufficient to sustain theory of apparent authority, despite allegation that shortly after plaintiff left a voicemail message in response to telemarketer's robocalls requesting additional information, a representative of defendant called him).[9]

---

[8] Plaintiff's reliance on Pro Customer Solar is therefore misplaced, as Bank alleged in that case that upon receiving the prerecorded calls, he was transferred to a live person who stated that the calls were being made to promote the defendant's goods and services. See 2018 WL 3637960, at *1. And in Charvat v. Allstate Corp., 29 F.Supp.3d 1147, 1150 (N.D. Ill. 2014), the defendant was specifically referenced in the robocalls.

[9] The facts in Naiman are most closely analogous to those in the instant case, and Bank's cursory dismissal of the Naiman decision is unpersuasive. See Pl. Opp. at 23. Bank discusses at length two earlier decisions out of the same district, see id. at 10-12 -- Abante Rooter & Plumbing, Inc. v. Pivotal Payments, Inc., Case No. 16-cv-05486–JCS, 2017 WL 733123 (N.D. Cal. Feb. 24, 2017), and Morris v. SolarCity Corp., Case No. 15-cv-05107-RS, 2016 WL 1359378 (N.D. Cal. Apr. 6, 2016) –- a couple of outliers that have never been cited by any federal courts in New York and that are at odds with decisions from this District.

2. *Ratification*

Plaintiff additionally argues that in his conversation with Bank, Lilly, acting on behalf of defendant, ratified the Prerecorded Call.  See Pl. Opp. at 19.  "Ratification requires acceptance by the principal of the benefits of an agent's acts, with full knowledge of the facts, in circumstances indicating an intention to adopt the unauthorized [conduct]."  Monarch Ins. Co. of Ohio v. Ins. Corp. of Ireland Ltd., 835 F.2d 32, 36 (2d Cir. 1987); see Hamm v. United States, 483 F.3d 135, 140 (2d Cir. 2007); Davis v. Carroll, 937 F.Supp.2d 390, 427 (S.D.N.Y. 2013); A. Terzi Prods., Inc. v. Theatrical Protective Union, 2 F.Supp.2d 485, 492 (S.D.N.Y. 1998).  First, as shown above, see *supra* pp.7-10, plaintiff has failed to allege any nonconclusory facts to establish an agency relationship between defendant and the maker of the Prerecorded Call.  See Thomas, 582 F.App'x at 679, 680 (no ratification of sending of text message absent a principal-agent relationship); Childress, 2018 WL 4684209, at *4 (no ratification of robocall where plaintiff failed to allege facts to show agency relationship between maker of robocall and defendant, to whom the call was transferred); Murray v. Choice Energy LLC, No. 1:15-cv-60, 2015 WL 4204398, at *6 (S.D. Ohio July 10, 2015) (dismissing TCPA claim where plaintiff failed to plausibly allege an agency relationship, which is a necessary element of ratification); see also Kristensen v. Credit Payment Servs. Inc., 879 F.3d 1010, 1014-15 (9th Cir. 2018) (where telemarketer was not agent or purported agent of defendant, its conduct was not ratifiable act).  Furthermore, the Amended Complaint fails to allege that defendant had any knowledge, let alone "full knowledge," of the material facts surrounding the Prerecorded Call.  See Naiman, 2017 WL 5992123, at *7, *12, *13 (rejecting

11

ratification theory and dismissing TCPA complaint despite allegation that live representative of defendant called plaintiff shortly after plaintiff left messages in response to two robocalls); A. Terzi Prods., 2 F.Supp.2d at 492 (Sotomayor, J.) (dismissing claims that were based on conclusory allegations of ratification); see also Hodgin v. UTC Fire & Sec. Ams. Corp., Inc., 885 F.3d 243, 254 (4th Cir. 2018). Therefore, Bank's Amended Complaint does not state a TCPA claim against Vivint based on a ratification theory.

### 3. *Aiding and Abetting*

Plaintiff additionally contends that a defendant may be held liable under the TCPA for aiding and abetting a statutory violation. See Pl. Opp. at 19-20. Although defendants may be held vicariously liable for TCPA violations under federal common-law principles of agency, see, e.g., Campbell-Ewald Co. v. Gomez, 136 S.Ct. 663, 674 (2016), plaintiff does not cite a single case, nor has this Court located one, where secondary liability for aiding and abetting was extended to the TCPA.[10] "[W]hen Congress enacts a statute under which a person may sue and recover damages from a private defendant for the defendant's violation of some statutory norm, there is no general presumption that the plaintiff may also sue aiders and abettors." Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A., 511 U.S. 164, 182 (1994) (construing the Securities Exchange Act). In fact, the Supreme Court has declared that "[i]f . . . Congress intended to impose aiding and abetting liability [for violation of a civil statute], we presume it would have used the words 'aid' and 'abet' in the statutory

---

[10] Bank appears to conflate aiding and abetting liability with vicarious liability. See Pl. Opp. at 19 (listing "Aiding and Abetting" as subheading under "Vicarious Liability"). In fact, an aiding and abetting theory imposes liability on a defendant for its own acts while vicarious liability imposes liability on a defendant for the acts of its agents. See Kiobel v. Royal Dutch Petroleum Co., 621 F.3d 111, 194 (2d Cir. 2010).

12

text.  But it did not." Id. at 177; see Rich v. BAC Home Loans Servicing LP, No. CV-11-00511-PHX-SRB, 2013 WL 10104612, at *5 (D. Ariz. Dec. 13, 2013) (citing Central Bank and dismissing claim for aiding and abetting violations of the FDCPA).

Even assuming *arguendo* that a claim for aiding and abetting a violation of the TCPA were cognizable, plaintiff has not pled facts sufficient to state such a claim.  Under federal common law, a plaintiff asserting a cause of action for aiding and abetting a tortfeasor must allege "(1) the existence of a violation by the primary wrongdoer; (2) knowledge of this violation on the part of the aider and abettor; [and] (3) substantial assistance by the aider and abettor in the achievement of the primary violation." Stutts v. De Dietrich Grp., No. 03-CV-4058 (ILG), 2006 WL 1867060, at *12 (E.D.N.Y. June 30, 2006) (internal quotation marks and citation omitted).  Bank contends that his allegation that Lilly told him that defendant regularly uses prerecorded phone calls establishes that defendant aided and abetted the statutory violation.  See Pl. Opp. at 20.  But plaintiff has not identified any substantial assistance that defendant provided to the unidentified party making the Prerecorded Call.  See Pan American World Airways, Inc. v. Vetements, Inc., No. 08 Civ. 5480(RJH), 2010 WL 3632732, at *6 (S.D.N.Y. Sept. 16, 2010); Mastafa v. Australian Wheat Bd. Ltd., No. 07 Civ. 7955(GEL), 2008 WL 4378443, at *4 (S.D.N.Y. Sept. 25, 2008) (Lynch, J.); Stutts, 2006 WL 1867060, at *14 n.24.  In the absence of such an allegation, the Amended Complaint does not state a claim based on a theory of aiding and abetting liability.  The District Court should dismiss the TCPA claim.

### III. New York General Business Law Claim

Plaintiff relies on the Court's exercise of supplemental jurisdiction in connection with his claims brought under New York's GBL. See Am. Compl. ¶ 14. Where, however, a "district court has dismissed all claims over which it has original jurisdiction," it may decline to exercise supplemental jurisdiction over a state claim. See 28 U.S.C. § 1367(c). Having recommended dismissal of the claim over which the Court has original jurisdiction, this Court further recommends that the District Court, in its discretion, decline to exercise supplemental jurisdiction over the remaining state law claims. See Purgess v. Sharrock, 33 F.3d 134, 138 (2d Cir. 1994) ("exercise of supplemental jurisdiction is left to the discretion of the district court"); see also Philips Elecs., 2015 WL 1650926, at *3 (dismissing Bank's TCPA claim and declining to exercise supplemental jurisdiction over GBL claim); Letter in Response to Defendant's [Premotion] Letter (June 25, 2018) at 2, DE #11 ("Bank does not disagree" that supplemental jurisdiction should be declined if his TCPA claim is dismissed).

### IV. Personal Jurisdiction Over Claims of Out-of-State Class Members

This Court briefly discusses defendant's motion to dismiss for lack of personal jurisdiction, which will be rendered moot unless the District Court rejects this Court's recommendation to dismiss plaintiff's federal cause of action for failure to state a claim.

Defendant contends that this Court lacks personal jurisdiction over putative out-of-state class members. See Def. Mem. at 9-15. "Under New York law, 'for a plaintiff to demonstrate personal jurisdiction over a defendant . . . the plaintiff must show either that the defendant was present and doing business in New York within the meaning of C.P.L.R.

14

§ 301,' known as general jurisdiction, 'or that the defendant committed acts within the scope of New York's long-arm statute, C.P.L.R. § 302,' known as specific jurisdiction." Stroud v. Tyson Foods, Inc., 91 F.Supp.3d 381, 385 (E.D.N.Y. 2015) (quoting Reich v. Lopez, 38 F.Supp.3d 436, 454 (S.D.N.Y. 2014)) (alteration omitted).

First, defendant correctly argues that the Court lacks general jurisdiction over the claims of out-of-state class members because New York is neither defendant's principal place of business nor its state of incorporation. See Def. Mem. at 9-10; Am. Compl. ¶ 8. Thus, defendant is not "at home" in New York so as to invoke either of those two bases for establishing general jurisdiction. See Daimler AG v. Bauman, 571 U.S. 117, 137-39 (2014).

Second, defendant contends that the Supreme Court's decision in Bristol-Myers Squibb Co. v. Superior Court of California, 137 S.Ct. 1773 (2017), compels the conclusion that the Court lacks specific jurisdiction over the claims of out-of-state class members. In Bristol-Myers, 600 individual plaintiffs, only some of whom were California residents, brought a mass-tort action in California state court. See id. at 1778. The Supreme Court concluded that the state courts lacked personal jurisdiction over claims brought by out-of-state plaintiffs against an out-of-state defendant, since neither the conduct nor injuries alleged had occurred in California. See id. at 1781-82. In her dissent, Justice Sotomayor noted that the majority failed to address whether its opinion applied to federal class actions "in which a plaintiff injured in the forum State seeks to represent a nationwide class of plaintiffs, not all of whom were injured there." Bristol-Myers, 137 S.Ct. at 1789 n.4. In the wake of the Bristol-Myers decision, lower federal courts have split on whether its rationale applies to federal court

15

nationwide class actions. See, e.g., Gazzillo v. Ply Gem Indus., Inc., 1:17-CV-1077 (MAD/CFH), 2018 WL 5253050, at *7 (N.D.N.Y. Oct. 22, 2018) (applying Bristol-Myers and dismissing non-resident plaintiffs' claims for lack of specific jurisdiction); Molock v. Wholefoods Market, Inc., 297 F.Supp.3d 114, 124-27 (D.D.C. 2018) (concluding that Bristol-Myers did not apply to claims of putative class members); Sloan v. General Motors LLC, 287 F.Supp.3d 840, 858-59 (N.D. Cal. 2018) (holding that Bristol-Myers does not preclude jurisdiction over out-of-state plaintiffs in class action); see also 2 Herbert B. Newberg & Alba Conte, Newberg on Class Actions § 6.26 (5th ed. 2018) (noting split in federal courts).

Here, as Bank notes, he has not yet filed a motion to certify a nationwide class. See Memorandum in Opposition to Defendant's Motion to Dismiss Class Claims (Aug. 31, 2018) ("Pl. Opp. Class") at 5-7, DE #16 (arguing that defendant's motion is premature). Given the unsettled and constantly developing caselaw regarding the application of Bristol-Myers to nationwide class actions, the more prudent course would be to follow the lead of other decisions in this and other districts and to defer the Bristol-Myers issue until such time as plaintiff moves for class certification. See, e.g., Campbell v. Freshbev LLC, 322 F.Supp.3d 330, 337 (E.D.N.Y. 2018); Gonzalez v. Costco Wholesale Corp., No. 16 Civ. 2590 (NGG) (JO), 2018 WL 4783962, at *7 (E.D.N.Y. Sept. 29, 2018).

## V. Plaintiff's Request for Sanctions

Plaintiff requests that sanctions be imposed against defendant for its "flagrantly . . . dece[ptive]" arguments regarding specific jurisdiction. See Pl. Opp. Class at 10. This Court does not find defendant's arguments, or its characterization of the cases on which it relies,

deceptive.   Accordingly, plaintiff's request for sanctions should be denied.

## CONCLUSION

For the foregoing reasons, this Court respectfully recommends that defendant's motion to dismiss under Rule 12(b)(6) of the FRCP be granted and that the District Court decline to exercise supplemental jurisdiction over plaintiff's New York state law claim.   In the alternative, this Court recommends deferring ruling on defendant's motion to dismiss the out-of-state putative class members' claims for lack of personal jurisdiction until plaintiff moves for class certification.   Finally, plaintiff's request for sanctions should be denied.

Any objections to the recommendations contained herein must be filed with Judge Brodie on or before March 11, 2019.   Failure to file objections in a timely manner may waive a right to appeal the District Court order.   See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72; Caidor v. Onondaga Cty., 517 F.3d 601, 604 (2d Cir. 2008).

**SO ORDERED.**

Dated:    **Brooklyn, New York**
          **February 25, 2019**

/s/     *Roanne L. Mann*
**ROANNE L. MANN**
**CHIEF UNITED STATES MAGISTRATE JUDGE**

17